BARRY SIMON JAMESON
CDCR # C88511
Pleasant Valley State Prison
California Department of
Corrections and Rehabilitation
Post Office Box 8502
Coalinga, CA 93210-8502
No Telephone, Fax or E-Mail

Petitioner,
Representing Self and
Layman at Law, Under
Disability of Imprisonment

E-filing




UNITED STATES DISTRICT COURT

DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY SIMON JAMESON, Petitioner, versus JAMES A. YATES, Respondent. | C No.: 07 3160 SBA (PR) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS |

## I. ARGUMENT

**PETITIONER HAS A FEDERALLY PROTECTED LIBERTY INTEREST IN RELEASE FROM PRISON STATUTORILY, DUE TO PRISON OFFICIALS NEVER SCHEDULING HIM FOR A "SERIOUS OFFENDER HEARING" TO DISQUALIFY HIM FROM THE BASE TERM SET BY THE COURT**

Petitioner had his BASE TERM of imprisonment set by the Court pursuant to the requirements of California Penal Code (PC), Sections 12 and 13 (which mandate when a sentence is left open between certain limits, the Court must specify what the length of the sentence will be). The Court set Petitioner's "Base Term" at 15 years (EXHIBIT A), meeting the requirements of PC Secs. 12 and 13. Upon entering the department of corrections (CDCR), prison officials are required by law to review all cases. If CDCR feel that a person has a sentence that is not consistent with their offense(s), they are required by law to screen that person's file several times and notify the person within 90 days that a "Serious Offender Hearing" (SOH) (called an "Extended Term Hearing" (ETH) after 1984) will be held. This hearing must be held within 120 days. Petitioner never

had any SOH/ETH (hereafter ETH) hearing. Consequently, because this is a due process safeguard that creates a federally protected liberty interest, it is and has been illegal for CDCR to keep extending his sentence, as it has expired. Petitioner is entitled to a non-extended and "uniform" Base Term, which was fixed for him by both CDCR and the Court at fifteen years for second degree murder and two years of enhancements or seventeen years, minus earned credits.

On 19 September 2005, prison officials once again "reviewed" his sentence and extended it using completely false information, without any input from Petitioner (**EXHIBIT B**). Because no ETH was held —as required by statute within 120 days of Petitioner's arrival in CDCR (PC sec. 1170.2(b))—these continued extensions violate the clear meaning of statute. Respondent may want to argue that PC sec. 1170.2 does not apply for an offense that occured after 30 June 1977; therefore, the ETH statute does not apply to Petitioner. This ignores the Plain Language meaning of PC sec. 5078, which states that "all powers and <u>duties</u> granted to, exercised by, and imposed upon the Adult Authority, . . . and the Community Release Board" shall be "exercise(d) and perform(ed)" by the Board of Prison Terms (called the Board of Parole Hearings (BPH) after 01 July 2005). Emphasis added. The "duties" include the decision pursuant to statute to look at a person's commitment offense within 90 days and make a decision whether to hold an ETH. If this is not done, an ETH cannot be held.

> Where petitioner's (ETH or) Serious Offender Hearing was not conducted within 120 days of November 29, 1978, the date of his receipt by the Department of Corrections, the action extending his prison term was <u>void</u> because the Community Release Board (now the Board of Parole Hearings) exceeded its jurisdiction in conducting a hearing after the 120-day period had elapsed, notwithstanding the Board's claim that the Legislature intended the 120-day limitation merely "directory," not "mandatory," and that it acted in "substantial compliance" with the statute. <u>In re Johnson</u>, 166 Cal.Rptr. 84, 85, n.1, 107 Cal.App.3d 780 (1980); emphasis added.

Not only did CDCR and the BPH not schedule Petitioner for an ETH, which can only be based on his commitment offense, but they set his BASE TERM as the Court did immediately upon entering CDCR at fifteen years for second degree murder, plus two years of enhance-

ments. (See EXHIBIT C; Petitioner's fixed "Term" under numerous different titles, fixed immediately upon entering CDCR, reviewed by CDCR and the BPH for decades, left intact, and mandating release in fifteen (15) years for second degree murder and two (2) years for enhancements; 17 years maximum.) His Base Term set by the Court was approved by CDCR, Petitioner was informed of it year after year since 1984 (when he entered CDCR), and because no ETH was held within 120 days, it violates statute and the federal constitution to extend Petitioner's term continually; especially, when it is being done arbitrarily by the Executive Branch, that is supposed to have no sentencing powers. [1.]

Petitioner's seventeen (17) years fixed length "Term" is shown in **EXHIBIT C** under such titles as:

* Maximum Release Date
* Term
* Total Term
* Max Date
* Days Left to Serve
* Days in Custody of the Department
* Maximum Eligible Parole Date
* Maximum Eligible Parole Date (Lifers)

Clearly these titles create a Liberty Interest protected by the U.S. Constitution. For example, the Cal. Code Regs., Title 15, Div. 2, sec. 2000(b)(64) defines "Maximum Release Date," which Petitioner was given in 1984 upon entering CDCR, as follows:

> (64) M.R.D.: Maximum Release Date: the latest date on which a DSL prisoner can be

1. In California, the Executive Branch has implemented a Zero Release Policy, sometimes mistakenly referred to as a Zero Parole Policy. Since parole is defined as "early release to complete the balance of the sentence" (Black's Law Dictionary, p.580 (1983)), using the sham of parole hearings to repeatedly extend prison terms has taken Petitioner through his five-year finite parole period; thus, his sentence has expired. The purpose of the DSL in 1977 was to end sixty years of abuse by the previous Indeterminate Sentencing Law for this exact same reason. Persons were being kept a decade or two past the end of any reasonable sentence. Thus, the DSL mandates "uniform" and fixed terms <u>if</u> no ETH is held.

released from confinement. ...

The aforementioned eight titles set forth on the previous page all are the exact same date. Each title is self-explanatory. The title "Days Left to Serve" matches exactly with the Court's fifteen year Base Term, plus two years, for seventeen years, and could not be more direct of a title. Petitioner was not considered an ETH candidate, and therefore, pursuant to law, his Term was fixed.

In July 1977, the Indeterminate Sentencing Law (ISL) was repealed after sixty years, and replaced by the Determinate Sentencing Law (DSL) of 1976. Because several "terms" were not absolutely fixed by statute, terms for second-degree murder were classified under the DSL as "DSL Indeterminate Term" terms. This is not an oxymoron, as the sentence must be fixed by the Court pursuant to Penal Code, secs. 12 and 13, but the term fluctuates with credits, whether parole is granted or not. (See **EXHIBIT D**; the California Department of Corrections "Department Operations Manual" or DOM, secs. 73010, which defines DSL Indeterminate Terms, and 73030.17.3.2, which mandates that ETH under Penal Code (PC), sec. 1170.2(b) must be considered for second-degree murder offenses. These DOM sections read the same for 2004, the latest version that Petitioner has available to read.) Therefore, Petitioner has a DSL Indeterminate Term—initially—and prison officials made it determinate when they fixed his Maximum Release Date, and did not consider his offense one that mandated an ETH.

Petitioner knows that Respondent(s) would try to argue that as long as they do not parole Petitioner, he is not entitled to be released. This view would ignore a plethora of statutes to the contrary and allow parole consideration to usurp the 120-day limit for an ETH set forth in the PC, but ignores the fact that Petitioner not only has a fixed "term," but also a finite period of parole that has also expired. Under the law, a sentence has two main parts: (i) a term or term of imprisonment, which is the time actually spent behind prison walls; and (ii) a period of parole, outside prison walls. Because the Court and prison officials fixed Petitioner's Base Term and Petitioner's parole window has opened and closed, he is entitled to be released without any parole and can never be paroled. It is

also illegal to continually extend Petitioner's term (time behind walls) because by not holding an ETH—which is based solely on the commitment offense—prison officials made what must be considered a reasonable decision looking at the factors before them in 1984 that Petitioner's offense did not reach the level of extraordinariness (for lack of a better term) to put Petitioner into such a class of persons. Consequently, because their decision not to place Petitioner into such a category went unchallenged in 1984, prison officials are statutorily barred from extending Petitioner's term at this belated date.

If charted, Petitioner's sentence should look like below, prior to reduction for credits:

| DSL Determinate Court-Ordered Sentence | |
|---|---|
| Entire Sentence | |
| 17-Year Fixed Base Term | Parole Period |
| 17 Years | 5 Years |

The 17 years was reduced by day-for-day (halftime) credits under PC secs. 2933 and 2934, to approximately 9 years. This means the 17 years was completed with both actual time and earned credits after 9 years in approximately 1992. The parole window opened and closed in five years; by 1997. Yet, on 19 September 2005, prison officials once again extended Petitioner's term using false information, without ever discussing anything with Petitioner.

The Ninth Circuit addressed this exact issue in McQuillion v. Duncan, 342 F. 3d 1012 (9th Cir. 2003) because McQuillion had his term fixed and a finite three-year period of parole, yet six years after parole possibility had expired in 1997, he was still litigating with the CDCR and BPT that he was entitled to release. The Ninth Circuit observed that McQuillion's term expired in 1994 and his three-year parole period, therefore, expired in 1997; consequently, it was impossible for him to ever be paroled. The Court found McQuillion's "three year parole, which he would have been required to serve if he had been released on time, has long

since expired." Emphasis added. McQuillion was immediately released, regardless of prison officials vehemently attempting to extend his term or imprisonment, without parole.

Not holding an Extended Term Hearing within 120-days, is tantamount to informing a person that they will not have an extended term and is analogous to a sentence reduction. Moreover, replacement of a mandatory sentence reduction (by, in this case, the setting of a Maximum Release Date as a "primary term" mandated by In re Rodriguez (14 Cal.3d 639, 122 Cal.Rptr. 552 (1975)) to be fixed promptly and could not be refixed)with discretionary sentence reduction cannot be permissible in light of Lindsey v. Washington, 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937); Weaver v. Graham, 101 S.Ct. 960, 968 fn. 20, 450 U.S. 24, 36, 67 L.Ed.2d 17 (1981), citing Lindsey, supra. It is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom (by extending Petitioner's term years after the 120-day limit has expired, statutorily barring such an extension). Lindsey, 301 U.S. at 401-02.

Courts violate due process guarantees when they impose unexpected criminal penalties by construing existing laws in a manner that the accused could not have foreseen at the time of the alleged criminal conduct. People v. Blakely, 96 Cal.Rptr.2d 451 (2000), citing U.S. v. Lanier, 520 U.S. 259, 266-67, 117 S.Ct. 1219, 137 L.Ed. 2d 432 (1997); Marks v. U.S., 430 U.S. 188, 191-92, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); and Bouie v. City of Columbia, 378 U.S. 347, 353, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). It is virtually impossible to read the criminal penalty statutes set forth, as well as administrative regulations, in 1982, when the offense occurred, and ignore the 120-day statutory bar to having an ETH; therefore, a statutory bar to extending a term.

CDCR themselves correctly classify Petitioner's term as a DSL Indeterminate Term, until determined (see DOM sec. 73010.6.16; **EXHIBIT D**). Under the statutory scheme of the DSL, the Board of Prison Terms is given no discretion as to the setting of parole. Once prisoner has completed his fixed term (or Maximum Release Date),

board is mandated to release him. In re Rogers, 28 Cal.3d 429, 435, 169 Cal.Rptr. 222 (1980).

State laws may give rise to liberty interests protected by the Fourteenth Amendment. Board of Pardons v. Allen, 482 U.S. 369, 381, 107 S.Ct. 2415, 2422, 96 L.Ed.2d 303 (1987). Misapplication of these laws that lead to deprivations of those liberty interests by state institutions may be reviewed in federal habeas proceedings. See Wasko v. Vasquez, 820 F.2d 1090, 1091 n.2 (9th Cir. 1987). Courts should protect prison inmates against arbitrary official action. In re Boag, 35 Cal.App.3d 866, 869, 111 Cal.Rptr. 226, 227 (1973).

Statute requires that persons with a second-degree murder be considered for an ETH. (**EXHIBIT D**) By not holding one for Petitioner, a liberty interest was created in Petitioner not having his term extended, because after 120 days it was statutorily barred. Courts have held that prison officials create a liberty interest by setting a release date—even if done so in violation of statute on mistake—reviewing it over and over, and letting it stand for a lengthy period. In Johnson v. Williford, 682 F.2d 868 (9th Cir. 1982) this occurred and the Court applied Government Estoppel and released him, because prison officials mistakenly calculated and reviewed his erroneous release date for years, and they left it intact. Petitioner is better situated than Johnson, as he had his Maximum Release Date (MRD) fixed after prison officials made their statutory choice not to categorize Petitioner as needing an ETH; therefore, all of Petitioner's maximum dates all allow for his release pursuant to law. The Johnson Court clarified that "(e)ven convicted criminals are entitled to be treated by their government in a fair and straightforward manner." 682 F.2d at 872.

The DSL brought in the mandate of "uniformity." (PC sec. 1170(a)(1), which in its pertinent part reads: The Legislature finds and declares that the purpose of imprisonment for crime is punishment. This purpose is best served by ... uniformity in sentences ....) Even the parole board implemented matrix guidelines in Cal. Code Regs., Title 15, Div. 2, sec. 2403, to ensure that they

fix uniform terms for similar offenses committed in similar manners. Of course, since they do not parole persons in California and Petitioner has far exceeded his parole window, he cannot even have one of these Base Terms. (See Matrix "Base Term" guidelines; EXHIBIT E.) Nevertheless, the Court fixed his Base Term at fifteen years and CDCR is disallowed administratively to extend such, or it will violate the Separation of Powers and Petitioner's liberty interest in the Judicial determination.

The general rule is that a change in a legal sentence to increase the penalty it imposes violates the double jeopardy clause. U.S. v. Wingender, 711 F.2d 869 (1983); see Kennedy v. United States 330 F.2d 26, 27-28 (9th Cir. 1964). Double jeopardy clause's protection against multiple punishments prohibits government from punishing twice or attempting a second time to punish criminally for the same offense. Emphasis added; U.S. v. Ursery, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), on remand 92 F.3d 1485. The Court, pursuant to PC sec. 13, fixed Petitioner's "Base Term" at fifteen years.

> SECTION 13. WHEN PUNISHMENT LEFT UNDETERMINED.
> Whenever in this code the punishment for a crime is left undetermined between certain limits, the punishment to be inflicted in a particular case must be determined by the court authorized to pass sentence within such limits as may be prescribed by this code. (Emphasis added.)

The options for the Court was between 15 years and life, and the Court, as required, made a choice. In People v. Giles, 166 P.2d 623 (1945), applying the Plain Meaning standard, the Court addressed Penal Code, sections 12 and 13 and found "the words of these two sections need no interpretation. Plainly they stamp the steps to be taken to determine the severity of a sentence as part of the judicial proceedings in the case." If the Court had wanted to aggravate Petitioner's sentence, the Court would have had to make a statement of aggravation on the record. It did not.

Penal Code, section 1170(b) mandates that the Court "shall set forth on the record the facts and reasons for imposing the upper or lower term." There is no statement of aggravation, and the Court

is presumed to know its sentencing options and mandates at the time of sentencing. Sentencing is the exclusive province of the judiciary, to be accomplished within limits set by the Legislature. People v. Vergara, 282 Cal.Rptr. 90, 230 Cal.App.3d 1564 (1991). Black's Law Dictionary, Abridged Fifth Ed., p. 708 (1983) defines "Sentence" as "judgment formally pronounced by the court or judge ... imposing the punishment to be inflicted." In fact, it continues with, "The word is properly confined to this meaning." Thus, it both defines and limits such.

It is an established principle of statutory construction "that ambiguities in penal statutes must be construed in favor of the offender." People v. Yates, 194 Cal.Rptr. 765, 769 (1983), citing In re Jeanice D., 28 Cal.3d 210, 217 (1980). There is simply no ambiguity in the Extended Term Hearing statutes. PC sec. 5078 brings the duties of previous parole boards to present ones, and the unambiguous duty is to hold an Extended Term Hearing within 120 days of Petitioner entering CDCR (see **EXHIBIT D**) or an ETH can never be held. It is Double Jeopardy, a violation of Separation of Powers, a Due Process violation, a Liberty Interest violation, and a violation of both penal and administrative statute for prison officials to continually extend his term of imprisonment under the guise Petitioner is being considered for parole.

No Extended Term Hearing was held within 120 days of Petitioner's arrival in CDCR; therefore, his "term" was fixed by CDCR, as set by the Court, at fifteen years. On September 19, 2005, action was taken by both CDCR and parole personnel to extend Petitioner's term once again. Like McQuillion, supra, Petitioner's term and period of parole have expired.

## CONCLUSION

For the reasons set forth above, specifically because a Serious Offender Hearing/Extended Term Hearing was not held within the required 120-day statutory limit, Petitioner contends that he has a protected liberty interest in his release created by state statute and protected by the United States Constitution, and the writ should issue accordingly.

Respectfully submitted,

Barry Jameson

**BARRY SIMON JAMESON**
Petitioner,
Representing Self and
Layman at Law, Under
Disability of Imprisonment

Enclosures

xc All Concerned

:bsj

/ / /

/ / /

/ / /

/ / /